Justice Laurie McKinnon, dissenting.
*1200 ¶64 I agree with the Court's conclusion that the Governor and the Director have standing to bring this challenge and accordingly concur with Issue One. I disagree, however, with the Court's interpretation of § 87-1-209(1), MCA, and its conclusion regarding Issue Two. I therefore ***58 dissent and write separately to explain my reasoning. Based on the ordinary meaning of "land acquisition" and the plain language of the statute, I conclude the term generally encompasses all of FWP's acquisitions. Therefore, I would hold that FWP must obtain the Land Board's approval when it seeks to acquire an easement involving more than 100 acres or $ 100,000 in value.
¶65 FWP must obtain Land Board approval for a "land acquisition involving more than 100 acres or $ 100,000 in value." Section 87-1-209, MCA, entitled, "Acquisition and sale of lands or waters," vests FWP with the statutory authority to acquire and sell lands and waters. See § 87-1-209(1), MCA (acquisition); § 87-1-209(3), MCA (sale). Section 87-1-209(1), MCA, provides:
Subject to 87-1-218 and subsection (8) of this section, the department, with the consent of the commission or the board and, in the case of land acquisition involving more than 100 acres or $ 100,000 in value, the approval of the board of land commissioners, may acquire by purchase, lease agreement, gift, or devise and may acquire easements upon lands or waters for the purposes listed in this subsection. The department may develop, operate, and maintain acquired lands or waters:
(a) for fish hatcheries or nursery ponds;
(b) as lands or water suitable for game, bird, fish, or fur-bearing animal restoration, propagation, or protection;
(c) for public hunting, fishing, or trapping areas;
(d) to capture, propagate, transport, buy, sell, or exchange any game, birds, fish, fish eggs, or fur-bearing animals needed for propagation or stocking purposes or to exercise control measures of undesirable species;
(e) for state parks and outdoor recreation;
(f) to extend and consolidate by exchange, lands or waters suitable for these purposes.
¶66 Properly deconstructed, § 87-1-209(1), MCA, grants FWP the authority to-for the purposes listed in (a) through (f)-"acquire by purchase, lease, agreement, gift, or devise" and "acquire easements upon lands or waters." To do so, FWP must obtain certain approvals. In every instance, FWP must obtain the consent of either the fish and wildlife commission or the state parks and recreation board. Section 87-1-209(1), MCA ; § 87-1-101(1) - (2), MCA (defining commission and board). It must also, "in the case of land acquisition involving more than 100 acres or $ 100,000 in value," obtain the Land Board's approval. Section 87-1-209(1), MCA. The Court must determine whether the term "land acquisition" includes FWP's acquisition of ***59 easements. If it does, then when FWP seeks to acquire easements involving more than 100 acres or $ 100,000 in value, it must obtain the Land Board's approval in addition to the approval of either the fish and wildlife commission or the state parks and recreation board.
¶67 The Legislature did not define the term "land acquisition," and therefore we interpret the term by ascertaining the term's plain and ordinary meaning. See Alpine Aviation, Inc. , ¶ 11. A simple reading of § 87-1-209(1), MCA, demonstrates the Legislature's clear intention to require FWP to obtain Land Board approval for all large acquisitions-regardless of the type. The Legislature routinely uses precise terms describing certain types of property interests when it intends to be specific. Here, in contrast, the term "land acquisition" is neither a term of art nor a reference to only one type of acquisition. Instead, "land acquisition" reflects a general concept encompassing the entire spectrum of real property interests FWP may acquire. Section 87-1-209(1), MCA, itself describes the non-specific scope of "land acquisition": FWP may "acquire by purchase, lease, agreement, gift, or devise" and "acquire easements upon lands or waters." FWP must obtain Land Board approval for all large acquisitions-including easement acquisitions-involving more than 100 acres or *1201 $ 100,000 in value. The Court's contrary, narrow interpretation is incongruous and incompatible with the statute's plain language.
¶68 Further, Black's Law Dictionary's definition of "acquire" supports reading "land acquisition" as a non-specific, generally applicable term. As the Governor himself notes in his Petition, Black's Law Dictionary defines "acquire" as "[t]o gain possession or control of ." Acquire , Black's Law Dictionary (10th ed. 2014) (emphasis added).[1] However, the Governor then combines the definitions of "land" and "acquire," to define "land acquisition" as "gaining possession over a portion of the earth's solid surface." The Governor conveniently omits the word "control," which, if inserted, results in "land acquisition" being defined as "gaining possession or control over a portion of the earth's solid surface."
¶69 An "easement" is "[a]n interest in land owned by another person, consisting in the right to use or control the land ... for a specific limited ***60 purpose." Easement , Black's Law Dictionary (10th ed. 2014) (emphasis added). It is "a nonpossessory interest in land-a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land." Walker , ¶ 12. A conservation easement is a special type of negative easement whereby an owner of land voluntarily relinquishes certain rights, preserving the land's natural character. See § 76-6-104(2), MCA ; see also Conservation Easement , Black's Law Dictionary (10th ed. 2014). A conservation easement permits FWP to control certain aspects of a piece of real property while the ultimate ownership remains with the original landowner. When FWP obtains a conservation easement, it obtains the right to control certain aspects of a piece of real property-something that falls squarely within the plain meaning of "land acquisition" in § 87-1-209(1), MCA.
¶70 Giving effect to all of § 87-1-209(1), MCA, requires this Court to include easements in the term "land acquisition." Section 87-1-209(1), MCA, provides that FWP "may develop, operate, and maintain acquired lands or waters" for "the purposes listed in this subsection." The enumerated purposes encompass purposes that FWP could effectuate on easement land. For example, "acquired lands" may be used as lands "suitable for game, bird, fish, or fur-bearing animal restoration, propagation, or protection"; "for public hunting, fishing, or trapping areas"; and "to capture, propagate, transport, buy, sell, or exchange any game, birds, fish eggs, or fur-bearing animals needed for propagation or stocking purposes or to exercise control measures of undesirable species." Section 87-1-209(1)(b)-(d), MCA. Those purposes fit into the purposes for which conservation easements are typically established and support the conclusion that FWP may "acquire lands" for a conservation easement.
¶71 The context of the larger statutory scheme also supports a general, non-specific interpretation of "land acquisition." The Court notes that when FWP acquires a conservation easement on private land, it does not acquire the land itself but instead acquires an interest in those lands. Opinion, ¶ 57. I agree-a conservation easement is undisputedly an interest in land, not land itself. I disagree, however, with the Court's reasoning that, based on the context of the statutory scheme, " 'land acquisition' plainly means an actual possessory interest in land." See Opinion, ¶¶ 55, 59-60. If that were the Legislature's intent, it would have used a more specific term, such as "fee title," as it does elsewhere. See, e.g. , § 70-17-111(2), MCA ("A conservation easement may not be extinguished by taking fee title to the land to which the conservation easement is attached."). A legally cognizable interest in ***61 land may take many, more specific, forms, e.g. , a fee simple, a leasehold interest, a life estate, or an easement. All of those interests provide for the possession or control of land and are included within the broader, non-specific term "land acquisition." The Legislature's use of the general term "land acquisition" demonstrates its clear intent to require FWP to obtain Land Board approval when *1202 seeking a large purchase of any of the more specific interests in land. It makes little sense that the Legislature intended FWP to seek Land Board approval when spending over $ 100,000 of public monies to purchase a possessory interest in land, but then not seek Land Board approval when spending $ 6.1 million to purchase the right to control land.
¶72 Further, contrary to the Court's reasoning, Opinion, ¶ 55, the "land acquisition" notice requirement found in § 87-1-218(3)(c), MCA, does not exclude conservation easements from the definition just because conservation easements do not impact local property taxes. In the case of a conservation easement, the notice would simply include the fact that there would be no impact on the local tax base. The fact that conservation easements have no impact on property taxes does not indicate that the Legislature did not intend for conservation easements to be included in the general term "land acquisition." The notice requirement applies to all "land acquisitions" and, in the case of easements, the notice would simply provide that there is no tax impact.
¶73 Interpreting the plain language of § 87-1-209(1), MCA, leads me to the conclusion that the term "land acquisition" includes the acquisition of conservation easements. I therefore agree with the AG and would conclude that FWP must obtain Land Board approval when it seeks to acquire conservation easements greater than 100 acres or $ 100,000 in value. As a conclusory aside, I find it both helpful and prudent to take a step back, look at the statute as a whole, and consider, practically speaking, what the Legislature intended to do when it required FWP to obtain various approvals for its acquisitions. The Legislature mandated FWP to always garner the approval of either the fish and wildlife commission or the state parks and recreation board. The Legislature further desired FWP to obtain additional approval for large purchases-those involving either a large amount of land or a large amount of money-and decided to mandate Land Board approval for those purchases. The Court's reading of the statute based on an overly-narrow and selective definition of "acquire" defeats the Legislature's obvious, common sense intent to require FWP to obtain additional approval for large purchases. While I agree that the Governor and Director have standing, I dissent from the Court's analysis of Issue Two and its ultimate holding.

Merriam-Webster similarly defines acquire as "to get as one's own" or "to come into possession or control of often by unspecified means." Acquire, Merriam-Webster's Collegiate Dictionary (Frederick C. Mish ed., 11th ed. 2012) (emphasis added). The Court, on the other hand, selectively quotes from a 1996 version of The American Heritage Dictionary, which defines "acquire" as "[t]o gain possession of." See Opinion, ¶ 54.